By the Court, Cowen, J.
J.The section under which the defendant was indicted, is as follows : “ Every person who shall buy or receive in any manner, upon any considération, any personal property of any value whatsoever, that shall have been feloniously taken away or stolen from any other, knowing the same to have been stolen, shall, upon conviction, be punished,” &c. (2 R. S. 567, 2d ed. § 71.)
In charging the jury, the court mentioned the owner of the goods coming to reclaim his stolen property, and his bona fide agents, as not within the purview of the statute. But I take it to be clear, on the other hand, that if, pursuant to an understanding between a stranger and a thief, the stranger invite an interview with the owner, and obtain and actually receive the goods for him, under the mere color of an agency, but really to make a profit out of the larceny, he is a receiver within the statute.
The broad ground was taken on the argument, that the offence would not be within the statute of receivers, even though a reward should be taken from the thief himself. A corrupt receiving of goods for the owner was thought to be without the English statutes of receivers, which, it may be admitted, are *204 equally comprehensive with our own as to subject matter» The first was 4 Wm. & Mary, ch. 9, § 4, (A. D-. 1691,) declaring buyers and receivers of stolen goods to be accessories after the fact, and punishable as such. (9 Pick. St. at Large, 139.) The defect in this statute was, not that it came short of embracing the receipt and delivery for a reward, but because the principal must be convicted before the buyer or receiver could be reached. The statute 5 Ann. ch. 31, §§5 #6, (A> D¡ 1706,) was therefore passed. Section 5, it is true, repeated the provision of 4 W. dr M., but it added penalties against harborers of thieves •, and the 6th section provided that the buyer or receiver might be convicted and punished as for a misdemeanor, though the principal could not be taken, &c. (11 Pick. St. at Large, 285.) No book denies that one who should, for his own profit, have practiced the actual receiving of goods from, thieves, and delivering them to the owners, upon a colorable bargain for favoring the owner, would have been guilty within these statutes; nor was the statute, 4 Geo. 1., ch. 11, § 4, (A. D. 1717,) passed to remedy any such defect. That act recites, that persons having secret acquaintance with felons, made it a business to help others to their stolen goods for a reward to be divided between the helper and the felons. It then enacts that, “ wherever any person taketh money or reward directly or indirectly, under pretetice or upon account of helping any person, &c. to any stolen goods, &c., such person so taking, &c. (unless such person doth apprehend &c. stick felon, and cause such felon to be brought to his trial, &c.) shall be guilty of felony, &c., according to the nature of the felony committed in stealing such goods,” Sec. (13 Pick. St. at Large, 474.) This statute makes the offence a principal felony, and such was its leading object. It was passed to meet the evasions of the notorious Jonathan Wild, who kept a shop for restoring stolen goods, and yet his practices as a receiver could not be effectually broken up by the former statutes j mainly, it is presumed, because his principals were kept con? c.ealed, and hence could not be convicted, so as to lay the foun *205 dation of an indictment against him as an accessory. The making of his offence a misdemeanor by the statute of Ann. seems to have been thought too mild, or its terrors were found to be entirely ineffectual. The former difficulties in the way of a capital prosecution being removed by the statute of Geo. 1, and Wild continuing his former practices, he was finally convicted and executed. (4 Bl. Com. 132 ; 1 Leach’s Cas. 17, note (a) ; Wild’s Case, id. 19, note (a) ; 2 East’s P. C. 770, ch. 16, § 155.) Beside, the statute might be violated though the offender never received the goods, or had any acquaintance With the felon j and though the goods were never restored, and the offender never had any power to restore them. A mere offer to restore for a reward received was held to be enough. (Rex v. Ledbitter, By. Sr Mood. Cr. Cas. 76, A. D. 1825.)
Another English statute (25 Geo. 2, ch. 36, § 1, A. D. 1752,) recited that, advertising a reward, with no questions asked, for the return of things lost or stolen, was one great cause of thefts and robberies ; and imposed a pecuniary penalty upon that and its kindred practices. The same statute, ^ 2, recited that the multitude of places of entertainment for the lower sort of people was another great cause of thefts and robberies, as they were thereby tempted to spend their small substance in riotous pleasures, and in consequence were put on unlawful methods of supplying their wants and renewing their pleasures. That and the subsequent sections, therefore, imposed restrictions on the right of keeping such places on foot, by licensing them, and requiring that they should be used as places of resort at certain hours of the day only. (20 Pick. St. at Large, 375.)
It is true, that although the later legislation of England makes the receiving of stolen goods a substantive offence, and dispenses with the previous conviction of the thief, yet the parliament have thought proper to retain, in a distinct enactment, the provision against taking a reward for restoration. (7 & 8 Geo. 4, ch. 29, § 54 & § 58 ; see 2d Russ, on Cr. 242,251, Phila. ed. of 1836.) The case of Rex v. Ledbitter, just cited from *206 Ry. & Mood., will show the reason for doing so, without supposing that the actual receiver under a reward from the owner was not within the general statute against receivers.
Our own legislation was more direct, making the whole a principal crime except the naked offering to restore for reward. A corrupt receiving and restoring is both within the letter and spirit of the statute, however it may be colored by a bargain. It is Jonathan Wild’s case over again, disembarrassed of the necessity of first convicting the thieves.
Some English statutes later than the 25 Geo. 2, provide more direct remedies against the criminal receipt of stolen goods. Such are the statutes (29 Geo. 2, ch. 30, § 1, & 22 Geo. 3, ch. 58, § 1,) which made the buying or receiving with knowledge a misdemeanor, and dispensed with the necessity of the thief being previously convicted. (See 21 Pick. St. at Large, 467, $ 34 id. 82.) The nature of the crime was left to the same mode of expression as in the previous statutes of 4 W. & M. and 5 Ann.
With regard to all the statutes, Mr. East (Cr. Law, 2 vol. 765, ch. 16, § 153,) remarks, that it is sufficient if the goods be in fact received into the possession of the accused, in any manner, malo animo. An instance he puts is, the purpose oí favoring the thief; a consequence which almost necessarily follows by disconnecting him from his felonious burthen, the ear-mark by which he is commonly identified. Nor will the thief deal without an agreement to favor him, which was evidently made in the instance before us. This the defendant virtually admitted by remarking in the course of his tampering, that these thieves were “ scary birds.” East considers it criminal to receive the goods in any manner without lawful authority express or implied. (Id.) In Rex. v. Davis, (6 Carr. & Payne, 177,) Gurney, B. said, “ If the receiver takes without any profit or advantage, or whether it be for profit or not, or merely to assist the thief, it is the same.” (And see Roscoe's Cr. Ev. 721, Phila. ed. of 1836.)
In the case at bar, the defendant had come to a knowledge *207 of the larceny soon after its commission ; and he appeared to have that sort of communication, and to exercise such a control in respect to the stolen goods, and to negotiate in such a way for their delivery, as to raise a strong belief that he had arranged with the thief to restore the goods as a method of profiting by the crime. He receiving and delivering the goods under such a corrupt arrangement, the pretence of acting as agent for the owner could not operate as a protection. He would be in truth acting for himself. His pretext of agency for the owners would be fraudulent and void ; and to allow practices of this kind would be to sanction a mode of evading the statute.
It seems to me that the charge of the court below when properly understood, so far as it relates to the merits, can hardly be considered as going beyond the distinction between a real and colorable agency; between the defendant affecting to receive the goods for the owner, but really receiving them for his own benefit. The only part of the charge on the merits which is questioned by the bill of exceptions, respects the concluding transaction of Saturday the 26th of June, when the agreement for the delivery of the goods was consummated. That at this time the defendant knew the goods to have been stolen, there is no doubt; nor that he had known the same thing during the previous days of the week. Now if he had all this time been treating for such a reward only as was insisted on by the thief before he would give up the goods, or for a fair compensation to himself, proposed and allowed as such, for his .trouble, or if he had required both, I do not understand the court below to have said that his receiving the goods and fulfilling such an engagement would have been criminal within the statute. But suppose that, with such full knowledge and so much negotiation and apparently honest intentions to benefit the owners, his secret intent on Saturday was to convert the reward or most of it to his own use—to make a commodity out of the felony at the expense of the owners—and that he received and restored the goods with that intent, and carried it out either by taking the whole reward or dividing with the thief; *208 it seems to me we have in such a case the very mischief which the statute was mainly intended to remedy. That mischief was such a receipt of stolen goods, with knowledge, as, contrary to the owner’s intent, should deprive him of them, or any part of them. This is the doctrine which I understand the court below to have held. They said, if he received the property on Saturday with the intent (such intent being unknown and unassented to by the owners or their agents) to appropriate the reward to himself or divide it with the thief, and did either, he was then guilty. I do not recite the charge literally, but such is the substance of that part to which the stress of the argument for the defendant was directed.
I would by no means be considered as admitting that any arrangement to obtain and restore stolen goods for a reward stipulated with the owner, and actually receiving them from the thief for that purpose, would stand clear of the statute. It obviously would not, if the reward were to be received from the thief; and, if from the owner, it would be a crime within the statute under which Jonathan Wild was hung. In the most favorable view, it would in general be an act of high legal criminality ; for it is commonly accompanied with a composition of felony. This at least is a crime from the imputation of which even the owner himself and his most innocent agents (if the word innocent be inadmissible) can hardly be considered clear in such a transaction. I know the punishment of the greatest thieves is, under our law, so insignificant that the crime of compounding has come to be thought venial by both parties. Larceny is looked upon by them as little more than a- trespass, and is often adjusted as a mere private matter about which the public care very little. Such a state of things has a tendency to drive the owner into very exceptionable methods for reclaiming his property. Under the weakness of the law, he looks upon them as a sort of measure for self defence, or as necessary remedies by his own act. But no such excuse applies to the casé of the agent. If he will open a communication with the thief, and obtain the goods in order *209 to profit by the transaction, even under direction from the owner, I am far from being disposed to tell him that he is not within the statute of criminal receivers.
But the case, as put to the jury, was short of this. The hypothesis submitted was, a traffic with the thief in such a way as to defraud the owner. The gist of this kind of offence is the intent to defraud. A man may even be guilty of stealing his own goods; as, if he secretly and fraudulently take them from his bailee, or take them from another so as to bring a charge upon him. And he might doubtless be guilty within the statute of receivers, should he fraudulently receive such goods from another who had stolen them. (Barb. Cr. Treat. 176 ; Fast. 123.) On the argument, we were referred to Wright v. The State, (5 Ferg. 154,) where it was held that, if a man be requested by the owner to obtain the goods of the thief and restore them, and, after obtaining the goods, he conceal them for his (the receiver’s) own benefit, he is within the statute. Truly so. But the court added, and on this the prisoner’s counsel relies, that if there was an honest intent to obtain and restore the goods, the case was not within the statute. It is supposed that the case cited is extreme, and fixes the boundary to the offence ; that therefore the identical goods, or some part of them, must be detained. The statute, however, does not even mention the detention of the goods, but only the receiving. The corrupt intent may be as obvious, and the injury to the owner as effectual, by fraudulently higgling for and obtaining a compensation, as by actually detaining the goods. In Rex v. Walkley, (4 Carr. & Payne, 132,) relied on by the defendant’s counsel, the prisoner never had possession of the notes. He merely received a part of the proceeds for which the thief had exchanged them.
The charge has been found fault with for even supposing that the agents could possibly be defrauded by the defendant concealing the share he intended to take himself. It is said the agents must have known that he would take a share, and that the thief was to have the réward, and pay the defendant *210 for his services. There is indeed evidence from which this might have been inferred ; but not enough to conclude the court below from submitting the question. The substance of the hypothesis in the charge was, that the defendant on Saturday dealt unfairly with the agents, by holding out the idea that the hard terms were imposed wholly or mainly by the thief; whereas, the defendant then secretly intended himself to take the whole or a great share of the profit arising from the negotiation. The amount stipulated between the defendant and thief is no where mentioned. How far this police officer was in fact a trader in the felony on his own account, did not therefore appear. He occupied an official station, which enabled him to extend a powerful arm of protection to the robber ■ and it was not improper to submit, that he availed himself of this advantage to tax the thief and plunder the owners far beyond what he was willing should meet the ear of the agents.
I have, however, already protested against the conclusion that, if the amount to be retained wras clearly understood between the defendant and the agents, and the judge had told the jury to convict notwithstanding, I should have been dissatisfied with the charge. This defendant was the factotum. The thief considering him an adept, appeals to him as a confidential go-between ; and he proposes to obtain and restore the goods—say, if you please, for a specific share of the stolen fund. This is acceded to, and he receives the goods. I can feel no doubt that such a man is within the statute, both as to letter and spirit. He instructs his counsel to call this honesty. It is indeed the honesty of a thief-broker •, and had he in this sense dealt honestly -¿.ml fairly both with the agents and the thief, I think he was within the statute. It follows, then, that in speaking of Saturday’s transaction, the court put it with too great qualification. They might well have told the jury, that though the agents of the bank were in no way imposed upon by the defendant, yet he was guilty. It follows that, so far from charging too strongly against the defendant, they erred in his favor.
The next question made by the prisoner’s counsel respects *211 the offer to show by the testimony of the defendant’s official clerk, the free statements of the former, during the pending negotiation, that he expected to obtain possession of the goods. This was offered to warrant the jury in concluding that he proceeded without disguise. But were we to admit the relevancy of the fact sought to be inferred, the declarations were not proposed to be accompanied with any act of the defendant, either in his communication with the parties or in obtaining the goods. The proof was, therefore, I apprehend, open to the objection raised in the court below, as being evidence of naked declarations in the defendant’s own favor. Such declarations are a sort of evidence which the defendant can always manufacture at his pleasure, giving them such an air and affixing such qualifications as may best suit his secret purpose. But I do not see how publicity of the mere fact that he expected to obtain the goods, was relevant. Had the evidence been of such a character as to show that he was acting with a view to the detection, arrest and conviction of the felon, and a consequent restoration of the goods in that way, the case would have been different. That a man speaks publicly of the hope to be in the reception of stolen goods, can make nothing in favor or against the degree of integrity which he means to bring into the transaction. It is not incompatible with an intent to use his good luck as a means of extortion against the person robbed. At least, it was not incompatible with the fact that he meant to receive the goods for a-reward in some way.
The next question respects the charge of the court that the issues of the bank were the property of the bank. The objection is not here, as it was in respect to the bonds, that the issues were misdescribed by the indictment. The charge refers to written contracts filled up and remaining at the bank, which, on being lawfully put in circulation, would have subjected the bank to a pecuniary liability. That such papers were the property of the bank, is entirely clear ; and this answers the exception. It is now said they were of no value ; but that was not the exception. It is obvious, however, they *212 were of some value ; and that, I apprehend, is enough. (Regina v. Morris, 9 Carr. & Payne, 347, and the cases there cited.) In this case a most serious injury was intended, and virtually committed. Had the issues been put in circulation, though tortiously, the bank might have been ruined. The case of Payne v. The People, (6 John. R. 103,) went on the ground that the letter stolen was of no intrinsic value whatever, even as a piece of paper. There is no color here for saying that, of the bank issues. There are several cases in point. (The King v. Clarke, 2 Leach, 1036 ; Rex v. Vyse, Ry. & Mood. Or. Cas. 218.)
The question whether the instruments acknowledging debts by the state of Maryland, called by the indictment bonds of the state of Maryland, are properly so described, may be more difficult of solution. Legally speaking, in order to constitute a bond, sealing is essential. (Jac. Law Diet. tit. Bond, III.) It is a deed. (2 Bl. Com. 340.) The word bond, therefore,necessarily imports a sealed obligation ; and the meaning is the same in common parlance. The instruments in question have neither seal nor pretence of seal; no impression, no scrawl, no L. S. They are, on their face, simple contracts ; and can with no more propriety be called bonds, than if they had been common promissory notes. There was no evidence before the jury that they were commonly called bonds ; and if otherwise, the indictment does not speak of them as instruments of a different quality commonly called bonds. It is simply for receiving bonds for so much, and of such value. It seems to me the court below erred in telling the jury that these instruments were well described. The quality and description of the property should have been stated with certainty and accuracy. (1 Chit. Cr. Law, 237, Jim. ed. of 1836. 3 id. 947.) All the cases agree, that if the proof vary from the specific thing stated, it will not support the indictment. The word bonds cannot be rejected as surplusage, and still leave enough in the indictment to make out choses in action of the description of thpse proved.-
*213 But it is not material to pursue the point; for the error could not possibly work any prejudice to the defendant. His guilt was the same, whether the whole or only part of the property was correctly described. It is a doctrine entirely settled in criminal proceedings, that though a conviction be wrong as to part, yet if it be right on the residue, the judgment shall stand. Thus, where the verdict is general for the people on several counts, though all are vicious except one, yet judgment passes ; (1 Chit. Cr. Law, 249, Am. ed. of 1836 ;) and an entire judgment may be given, quantum valere potest. (Id. 638.) The rule is different from that in civil cases, because in the latter, damages are given by the jury, and being entire, the court cannot apportion them. There, there is danger of doing injustice, and almost certain danger; for damages appear to have been found on the bad counts as well as good. Whereas, in criminal cases, the punishment is not measured by the jury. They merely say guilty or not guilty, and whether the guilt consist in doing a greater or less injury, the punishment, the legal consequence as graduated by the law, is in general precisely the same ; or, if left as matter of discretion with the court, they can reject the void, and apportion the punishment according to the valid charge. (Id.) So in respect to the proof. It is never material for instance, in larceny or receiving, that the indictment should be supported as to all the pieces of property in question. Proof of the offence in respect to only one of them, is equally an establishment of the charge in the indictment with the proof of all. (1 Chit. Cr. Law, 946, Am. ed. of 1836.) The offence of receiving stolen goods is complete, whatever be the number or amount in value. It is not like an action for a private injury, where the judge’s improperly receiving proof of converting certain goods might increase the verdict; but the verdict must of necessity be the same. It cannot be said here that, peradventure, had the miscalled bonds been excluded, the jury would have acquitted ; for it was not disputed on the trial, nay, it was conceded throughout, that the question was in every other possible re-' *214 spect the same concerning the property correctly described, as it was in respect to this. I need not go over the numerous cases which hold that, even on a bill of exceptions, an error in the court below which on its face and by legal necessity could do no injury, is not cause for a new trial. The application of that principle to various cases as they arose, has been repeatedly made. The last instance in this court was in Hayden v. Palmer, (2 Hill, 205,) and most of the examples maybe seen at large in Cowen & Hill's Notes to 1 Phil. Ev. pp. 787, 8. Had the case before us been one of improperly admitting evidence which bore in the least on the general question of guilt or innocence, no doubt a new trial should be granted ; but it was one of mere variance as to a portion of the articles, the prisoner being equally affected by every circumstance in respect to the articles properly described.
I admit the question is new; but so too are bills of exceptions in criminal cases. Before the revised statutes, they were unknown. Being now allowed, they must be regarded in their effect according to the established principles belonging to the system into which they have been introduced. They were allowed to guard against injury—I am willing to admit, all possible injury to the accused, including the merest formal mistakes in his case, though all the substance of guilt may stare us in the face. But I deny that a mere formal slip, which cannot vary the case in any possible view—an error which can do no harm to the accused, and has always been disregarded in analogous cases, and in other forms, as entirely immaterial—is to derive a more fatal influence against the prosecution from being placed in a bill of exceptions.
The case coming nearest to the present is Rex v. Hayes, (2 Strange, 843.) The indictment charged three distinct crimes, and the jury found specially certain facts, saying, if upon them the court should be of opinion the prisoner was guilty, then they found for the crown as to all three. The court were of opinion that the facts found made him guilty as to two only of the three crimes, and gave judgment accordingly. So here, *215 the finding of the jury can avail as a conviction of receiving the notes only. Practically, we can sever the property here as easily as the crime could be severed in Rex v. Hayes, and yet the offence charged be complete. Throw this bill of exceptions into the form of a special verdict, and the jury would say: “We find he received the notes and the bonds ,” describing each. On the verdict coming up for judgment, the court would see that the notes only were in the case, and yet they wrould be bound to pass sentence. Error would not then lie on the facts in this bill, if it were a special verdict, though this be in its nature the subject of error equally with a bill.
On the whole, I am of opinion that a new trial should be denied ; that the record be remitted, and the oyer and terminer be advised to jmss sentence.
Ordered accordingly.